UNITED STATES of America, Appellee,

v.

Christopher MUSTONE, Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

Michael John ISABARRONE, Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

Gene Ronald BRENNAN, Defendant, Appellant.

Nos. 72–1166 to 72–1168.

United States Court of Appeals, First Circuit.

Argued Oct. 4, 1972.

Decided Dec. 1, 1972.

---

Chester C. Paris, Wakefield, Mass., and Joseph J. Balliro, Boston, Mass., with whom Henry D. Katz, Boston, Mass., was on brief, for appellants.

Henry H. Hammond, Asst. U. S. Atty., with whom Joseph L. Tauro, U. S. Atty., was on brief, for appellee.

Before ALDRICH, McENTEE and CAMPBELL, Circuit Judges.

McENTEE, Circuit Judge.

These are appeals from convictions entered upon a three count indictment. Count I charged the appellants Isabarrone, Brennan, and Mustone with falsely making counterfeit Federal Reserve notes in violation of 18 U.S.C. § 471 (1970). Count II charged the same threesome with possession and concealing counterfeit notes in violation of 18 U.S.C. § 472 (1970), and Count III charged them with conspiracy to produce counterfeit notes in violation of 18 U.S.C. § 371 (1970). After trial by jury Isabarrone and Brennan were found guilty on all three counts. Mustone was convicted on the conspiracy count only. In these appeals appellants challenge the trial court's denial of their motions to suppress certain evidence. Mustone also questions the sufficiency of the evidence to support his conviction. For the reasons set forth below, we affirm.

The evidence adduced at trial may be summarized as follows. On January 11, 1971, Isabarrone rented a two room storefront office located at 3A Union Street, Lynn, Massachusetts from one Alfred Boyer. Brennan was present

when this rental agreement was made. The new tenant promptly replaced the lock on the door between the front and rear rooms and painted the windows in the back room black. About one week later some furniture and a large heavy black box were moved into the office. During the next two and a half months Isabarrone and Brennan were observed entering and leaving the 3A Union Street premises almost every day.

On January 12, 1971, Isabarrone purchased a used platemaker and a used vertical camera. During the following weeks he purchased ink and other printing and photographic materials from various Boston printing supply houses. In making these purchases he frequently used aliases and occasionally gave non-existent business addresses.

The Secret Service placed 3A Union Street under surveillance on February 28, 1971. On March 3, as Special Agent Patrick C. Miller stood outside the front window of this office, he heard the sound of an offset press in operation. On March 9, Secret Service security specialist Ronald Kozak observed Brennan leaving 3A Union Street carrying two large trash bags. Brennan placed these bags on the sidewalk near some garbage cans "several doors away" from 3A Union Street and then left the area. Both bags were tied closed. Kozak picked up these bags and deposited them in the Boston Secret Service office. When Agent Miller opened them the next morning he found a sheet of paper containing the impressions of three and one half counterfeit ten dollar notes and three aluminum offset plates stained with green ink.

Based primarily on this evidence government agents obtained a search warrant for 3A Union Street and on March 18 searched the premises. They found approximately $242,000 in printed but uncut counterfeit ten dollar notes, an offset press, a vertical camera, a platemaker, a black attache case containing plates used to print counterfeit notes, and a large quantity of other printing and photographic supplies. Isabarrone's and Brennan's fingerprints were found on objects inside the back room. All three appellants were arrested shortly thereafter.

■ On appeal appellants' primary contention is that the trial court erred in denying their Rule 41(e) motions to suppress the evidence found in the trash bags and during the search of 3A Union Street. With regard to the trash bags, appellants assert that the government's warrantless search and seizure of these bags violated Brennan's fourth amendment rights. They rely on People v. Krivda, 5 Cal.3d 357, 96 Cal.Rptr. 62, 486 P.2d 1262 (1971), vacated 409 U.S. 33, 93 S.Ct. 32, 34 L.Ed.2d 45 (1972), and argue that Brennan had a "reasonable expectation of privacy" as to the contents of these bags. In *Krivda* the California Supreme Court, citing Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967),[1] upheld a citizen's expectation of privacy as to the contents of a trash can placed on a public sidewalk awaiting pickup by municipal rubbish collectors. There the court upheld the suppression of evidence obtained during the warrantless search of the can. We are not persuaded by this authority, however, and hold that when Brennan deposited the bags on the sidewalk he abandoned them. Implicit in the concept of abandonment is a renunciation of any "reasonable" expectation of privacy in the property abandoned. The contrary suggestion strikes us as anomalous. *See* United States v. Dzialak, 441 F.2d 212, 215 (2d Cir.), cert. denied, 404 U.S. 883, 92 S.Ct. 218, 30 L.Ed.2d 165

---

1. The *Krivda* court placed strong reliance on the following language in *Katz*: "[w]hat a person knowingly exposes to the public, even in his home or office, is not a subject of Fourth Amendment protection. (Citations omitted.) But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." *Katz*, 389 U.S. at 351–352, 88 S.Ct. at 511. We, however, do not find this statement to be an adequate answer to the abandonment argument.

(1971); United States v. Stroble, 431 F.2d 1273, 1276 (6th Cir. 1970); United States v. Minker, 312 F.2d 632, 634–635 (3d Cir. 1962), cert. denied, 372 U.S. 953, 83 S.Ct. 952, 9 L.Ed.2d 978 (1963).

 Turning to the search warrant for 3A Union Street, little need be said with regard to appellants' contention that this warrant was issued without probable cause. The items found in the trash bags, taken in conjunction with Agent Miller's sworn statement that he overheard an offset press in operation inside 3A Union Street, clearly constitute sufficient cause to support the issuance of the warrant. We also find appellants' further argument that the warrant was issued on evidence discovered too remote in time from the date that the warrant was sought to be without merit. In the instant case eight days passed (March 9 to March 17) between the pickup of the trash bags and the application for the warrant. We do not find this gap unreasonable, *see* Rosencranz v. United States, 356 F.2d 310, 315 n. 3 (1st Cir. 1966) and thus conclude that the magistrate did not abuse his discretion in issuing this warrant.

 Turning now to Mustone's claim that the evidence was insufficient to support his conviction, we note initially that during the period from February 28 to March 18, 1971, Mustone was observed on at least six occasions in the company of either Isabarrone or Brennan. On February 28 Agent Miller saw Mustone come out of 3A Union Street and drive away. Earlier that day Agent McLaughlin had observed Isabarrone enter this office. On March 5 Agent Thomas McCarthy observed Isabarrone, Brennan, Mustone, and a fourth individual enter a doughnut shop in Lynn, Massachusetts. When McCarthy entered this shop, he saw the four men sitting together and overheard Mustone say "as long as we don't get busted." On March 13, three days after the counterfeit ten dollar notes had been discovered in the trash bag and only five days before the "printing plant" was raided, Alfred Boyer saw

Mustone enter 3A Union Street. Boyer testified that both Isabarrone and Brennan were in 3A at that time and that Mustone stayed the entire afternoon. On March 17 Agent Miller saw Mustone admit Isabarrone to an apartment, located at 29 Vallar Road, East Boston, where the former had been frequently observed. Mustone was also seen conversing with Brennan on at least two occasions outside this East Boston address.

Viewing these facts in the light most favorable to the government, Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942), we find that the trial court did not err in denying Mustone's motions for judgment of acquittal. In light of Mustone's continuous association with his fellow appellants, his statement in the doughnut shop, and his presence in the printing plant on a date after the government had obtained the evidence from the trash bags, we find that the jury could reasonably infer that Mustone was an active conspirator with Isabarrone and Brennan in this unlawful venture.

Affirmed.