RENDERED: MAY 17, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0549-MR

TERENCE CISERO         APPELLANT

v.   APPEAL FROM FAYETTE CIRCUIT COURT
HONORABLE DIANE MINNIFIELD, JUDGE
ACTION NO. 21-CR-01052

COMMONWEALTH OF KENTUCKY      APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, CETRULO, AND A. JONES, JUDGES.

JONES, A., JUDGE: Terence Cisero appeals a May 3, 2023 judgment of the

Fayette Circuit Court sentencing him to a year of imprisonment consistent with a

conditional guilty plea he entered relating to drug-related charges. He argues the

circuit court erred by failing to grant his motion to suppress the evidence that

underpinned his drug charges, namely, a quantity of methamphetamine and

associated paraphernalia that authorities discovered during a warrantless search of his vehicle following a traffic stop. Upon review, we affirm.

## I. BACKGROUND

The sole witness who testified at the suppression hearing was Officer Corey Sutton of the Lexington Metro Police. Regarding the circumstances that led to the warrantless search, Sutton testified, in summary and in relevant[1] part, that on April 18, 2022, he initiated a traffic stop of Cisero's vehicle on a public road in Lexington. The officer had observed Cisero disregard a red light, drive erratically, and change lanes without using a turn signal. Sutton asked Cisero for his driver's license and proof of insurance; Cisero supplied it; and, consistently with Sutton's directives, Cisero remained parked while Sutton returned to his patrol vehicle to fill out a citation for the traffic violations. When Sutton ran Cisero's driver's license information through his in-car computer, he discovered there was an active warrant for Cisero's arrest for bail jumping. Sutton testified he knew he was going to arrest Cisero when he determined, shortly thereafter, that the warrant was valid. He called for backup to assist him in effectuating Cisero's arrest. After backup

---

[1] The Commonwealth argues this Court may alternatively affirm the denial of Cisero's motion to suppress on the asserted ground that Sutton's warrantless search was justified under the "plain view" exception, *i.e.*, Sutton testified he plainly viewed evidence of criminal activity inside Cisero's vehicle – consisting of a what he regarded as a "medical tourniquet" associated with drug use – prior to the drug dog's arrival. We have omitted discussion of this testimony, as well as Sutton's additional testimony (frequently quoted by the Commonwealth) regarding what he viewed as Cisero's nervous demeanor, because it is not germane to our disposition.

arrived, Sutton instructed Cisero to exit his vehicle. Cisero did so, and Sutton arrested and placed him in custody without incident pursuant to the warrant.

Meanwhile, Cisero's vehicle was parked on a portion of a public road where it was not legally permitted to remain. Sutton told Cisero that someone must retrieve and move it for him, otherwise it would need to be towed. Cisero replied that he did not know anyone who could move it for him, so Sutton called for a tow truck. While awaiting the tow truck, Sutton asked Cisero for consent to search the vehicle. Cisero refused. Thereafter, Sutton called for a police dog to sniff the car. He testified the dog "alerted" at the passenger side of his vehicle; that the dog's alert provided probable cause to conduct a warrantless search of the vehicle; and that the search yielded the evidence at issue in this matter. Cisero was later indicted on a charge of disregarding a traffic light and – due to the evidence obtained in the warrantless search of his vehicle – charges of first-degree possession of a controlled substance and possession of drug paraphernalia.

At the suppression hearing, the Commonwealth argued the drug dog's "alert" was sufficient, for purposes of Cisero's Fourth Amendment rights,[2] to

---

[2] The Fourth Amendment to the United States Constitution, as applied to the states under the Fourteenth Amendment, and Section 10 of the Kentucky Constitution provide safeguards against unreasonable searches and seizures. Section 10 of the Kentucky Constitution – which Cisero also cited in favor of his suppression motion – "provides no greater protection than does the federal Fourth Amendment." *Artis v. Commonwealth*, 360 S.W.3d 771, 774 (Ky. App. 2012) (quoting *LaFollette v. Commonwealth*, 915 S.W.2d 747, 748 (Ky. 1996), *abrogated on other grounds by Kyllo v. United States*, 533 U.S. 27, 121 S. Ct. 2038, 150 L. Ed. 2d 94 (2001)). Fourth Amendment jurisprudence is premised on "the basic rule that 'searches conducted outside

-3-

generate the probable cause necessary to justify the warrantless search of his

vehicle. Cisero, for his part, did not contest the lawfulness of his traffic stop. He

did not contest that the drug dog had in fact "alerted" at the passenger side of his

vehicle. He did not contend the drug dog was improperly trained or otherwise

unqualified to detect drugs, nor did he ask any questions in that vein. Moreover,

by and through counsel, Cisero clarified that he did not take issue with the length

or duration of his traffic stop. Rather, his sole argument for excluding the drug

evidence was that he had refused to consent to any search of his vehicle and, as his

counsel phrased it at the hearing: "The issue is he was arrested and there was no

evidence of the crime of bail jumping in that vehicle, so they [*i.e.*, law

enforcement] should've just towed it and not searched it."

Following the suppression hearing, the circuit court entered an order

denying Cisero's motion. Its dispositive reasoning was as follows:

> In the case at bar, the vehicle was legitimately
> stopped. Defendant was not allowed to operate his
> vehicle due to the bail jumping warrant. So, there was
> clearly no *Rodriguez*[FN1] violation. Then, when the
> drug dog alerted to the passenger side of Defendant's
> vehicle, Officer Sutton was provided with probable cause
> to search the vehicle pursuant to the automobile
> exception. A positive canine alert, signifying the

the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions.'" *Arizona v. Gant*, 556 U.S. 332, 338, 129 S. Ct. 1710, 1716, 173 L. Ed. 2d 485 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 514, 19 L. Ed. 2d 576 (1967) (footnote omitted)).

presence of drugs inside the vehicle, provides law enforcement with the authority to search the vehicle.[FN2]

> [FN1] *Rodriguez v. United States*, 575 U.S. 348, 135 S. Ct. 1609, 191 L. Ed. 2nd 492 (2015).
>
> [FN2] *Morton v. Commonwealth*, 233 S.W.3d 566 (Ky. App. 2007).

Cisero later entered a guilty plea conditioned upon his right to appeal the circuit court's denial of his motion to suppress. The circuit court accepted and sentenced him consistently with his plea. This appeal followed.

## II. STANDARD OF REVIEW

"When reviewing a trial court's ruling on a motion to suppress, the findings of fact are reviewed under a clearly erroneous standard, and the conclusions of law are reviewed de novo." *Commonwealth v. Conner*, 636 S.W.3d 464, 471 (Ky. 2021) (quoting *Moberly v. Commonwealth*, 551 S.W.3d 26, 29 (Ky. 2018)). "[I]f the court's findings of fact are supported by substantial evidence, we then conduct a de novo review of the court's application of the law to the facts." *Id*. (quoting *Turley v. Commonwealth*, 399 S.W.3d 412, 417 (Ky. 2013)).

## III. ANALYSIS

On appeal, Cisero presents two arguments regarding why, in his view, the circuit court erred in denying his motion to suppress. His first argument reasserts what he posited below. In the words of his brief:

> [N]one of Officer Sutton's observations compelled a need to call for a dog. That dog was not going to "alert" to anything that advanced the Commonwealth's cases against [Cisero] for bail jumping or disregarding a traffic light. Officer Sutton called for the dog because he is a police officer who wanted to insert himself into a citizen's private business.

Appellant's Brief at 13.

Taken generously, Cisero is arguing that for Fourth Amendment purposes there must be probable cause for a police officer to conduct a sniff search of a stopped vehicle. However, he is incorrect. As recently clarified by the Kentucky Supreme Court in *Connor*, the sniff does not have to be related to the stop so long as it does not *delay* it. *Conner*, 636 S.W.3d at 474. This is because vehicular dog sniffs do not, in and of themselves, violate the Fourth Amendment. *Commonwealth v. Clayborne*, 635 S.W.3d 818, 825 (Ky. 2021); *Illinois v. Caballes*, 543 U.S. 405, 409, 125 S. Ct. 834, 838, 160 L. Ed. 2d 842 (2005) ("In this case, the dog sniff was performed on the exterior of respondent's car while he was lawfully seized for a traffic violation. Any intrusion on respondent's privacy expectations does not rise to the level of a constitutionally cognizable infringement."). Here, during the suppression hearing, Cisero specifically waived any challenge he might have leveled at the length or duration of his traffic stop; and in any event, the dog sniff caused Cisero no delay whatsoever because he had

already been arrested and placed into custody by the time it occurred. Accordingly, this argument lacks merit.

Second, Cisero contends the circuit court should not have regarded the drug dog's "alert" as substantial evidence or relied upon it as a basis for ascertaining probable cause because the Commonwealth did not adduce evidence demonstrating the drug dog's *reliability*. In his brief, and relevant to this point, he argues:

> Officer Sutton said the dog "alerted," but he and the Commonwealth failed to provide any context or facts to support what that meant or whether the alert was reliable. The record does not reveal how this dog alerted, whether its style of alerting was unique or based off a widely-accepted training model, how or if the dog received its training, whether the dog was subjected to a formal accreditation process, whether the police agency kept statistics on the dog's accuracy rate, whether the dog's accuracy rate was anywhere close to good, whether the officer coerced an alert, et cetera.
>
> . . .
>
> The dog's alert in this case *may* have been based on careful training, deployment, and adherence to acceptable practices and procedures. Unfortunately, there is no way to know from the case the Commonwealth presented.

Appellant's Brief at 14-18.

To the extent Cisero is arguing that a trial court's "gatekeeping" role of filtering out unreliable evidence encompasses the quality of a given drug dog's

-7-

"alert," he is correct. Although not considered "expert evidence" subject to *Daubert*,[3, 4] a drug dog's training and reliability can be similarly challenged as part of a motion to suppress. The United States Supreme Court set forth the framework as follows:

> The question – similar to every inquiry into probable cause – is whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime. A sniff is up to snuff when it meets that test.

*Florida v. Harris*, 568 U.S. 237, 248, 133 S. Ct. 1050, 1058, 185 L. Ed. 2d 61 (2013).

However, the reliability of the drug dog's alert in this matter is not properly before us because Cisero did not raise it as an issue below or request findings in that regard. As our Supreme Court explained in *Commonwealth v. Smith*, 542 S.W.3d 276 (Ky. 2018):

> RCr[5] 8.20(2) plainly states that "[w]hen factual issues are involved in deciding [the suppression] motion, the court shall state its essential findings on the record." . . . [Appellant] was obliged to raise the omission by

---

[3] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).

[4] *See Debruler v. Commonwealth*, 231 S.W.3d 752, 756-59 (Ky. 2007) (explaining why a dog's abilities and the quality of its training do not qualify as scientific evidence subject to a *Daubert* challenge).

[5] Kentucky Rule of Criminal Procedure.

motion under CR[6] 52.02 asking the trial court to make the additional findings and amend its order accordingly. [Appellant] did not do so.

An appellate court may decide only those issues which were fully presented to the trial court. . . . The appellate court reviews for errors, and a nonruling cannot be erroneous when the issue has not been presented to the trial court for decision. [Appellant's] failure to raise this omission of what it regards as a critical finding of fact in the trial court precludes appellate review of the omission.

*Id*. at 285 (internal quotation marks and citations omitted). Indeed, Cisero acknowledges that he failed to raise this issue below. Nevertheless, he invites this Court to address it on appeal – and for the first time – under the palpable error standard of RCr 10.26.

We decline. The consideration of any supposed palpable error lies within the discretion of the appellate court. *See* RCr 10.26 ("A palpable error which affects the substantial rights of a party *may* be considered . . . by an appellate court on appeal. . . .") (Emphasis added.) "For an error to be palpable, it must be easily perceptible, plain, obvious and readily noticeable." *Gaither v. Commonwealth*, 521 S.W.3d 199, 205 (Ky. 2017) (citation omitted). Even when a palpable error is detected, relief is granted only upon a determination that a manifest injustice has occurred. RCr 10.26.

---

[6] Kentucky Rule of Civil Procedure.

The evaluation of Cisero's claim is particularly difficult, if not impossible, because he never challenged the sufficiency of the drug dog's alert. No hearing was held, and no testimony was taken concerning the drug dog's training or qualifications to make the alert, or the specific circumstances surrounding it. A reviewing court cannot review that which has not been placed in the record, nor is this Court willing to speculate as to how the trial court might have ruled had a hearing been conducted. *See, e.g.*, *Tharp v. Commonwealth*, 40 S.W.3d 356, 368 (Ky. 2000) (declining, in an analogous context, to "speculate on the outcome of an unrequested *Daubert* hearing, or to hold that the failure to conduct such a hearing *sua sponte* constitutes palpable error."). Absent a more developed record on the issue, we simply are unable to conclude that any error occurred. Accordingly, with no showing of a "plain" or "obvious" error, this Court refuses to conduct a palpable error review.

## IV. CONCLUSION

In consideration of the foregoing, we affirm.


ALL CONCUR.

BRIEFS FOR APPELLANT:

Steven J. Buck
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Sarah N. Christensen
Assistant Solicitor General
Frankfort, Kentucky