**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION  II**

| | |
|---|---|
| STATE OF WASHINGTON, | No.  47135-3-II |
| Respondent, | |
| v. | |
| PATRICK ARNOLD LEE FICK, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, P.J. — Patrick Arnold Lee Fick appeals his jury trial convictions for one count of unlawful possession of a controlled substance (methamphetamine), one count of unlawful possession of a controlled substance (oxycodone), one count of possession of explosives without a license, and one count of use of drug paraphernalia.[1]  We hold that (1) the trial court did not err when it found Fick had abandoned his backpack and denied Fick's motion to suppress the evidence found during the initial search of the backpack, (2) Fick fails to show that his defense counsel's failure to argue that the affidavit supporting the subsequent search warrant did not establish probable cause was prejudicial, and (3) the trial court failed to conduct an individualized inquiry into Fick's ability to pay discretionary legal financial obligations (LFOs).  Accordingly, we affirm

---

[1] The judgment and sentence in this matter incorrectly states that Fick was convicted of two counts of unlawful possession of a controlled substance (methamphetamine).

Fick's convictions, reverse the imposition of discretionary LFOs, and remand to the trial court to conduct the required individualized inquiry into Fick's ability to pay the discretionary LFOs and to correct a scrivener's error in the judgment and sentence.

FACTS

I. BACKGROUND[2]

On October 2, 2013, Skamania County Deputy Sheriff Summer N. Scheyer saw Fick walking down the roadway while wearing a black Dakine backpack. She stopped Fick and advised him that there were warrants for his arrest. As Deputy Scheyer attempted to handcuff him, Fick broke away and ran. Deputy Scheyer initially chased Fick, but she ended the pursuit out of concern for officer safety and requested assistance from a K-9 unit. Before ending the pursuit, Deputy Scheyer saw Fick turn down Second Street.

Although the K-9 unit could not locate Fick, the dog pulled a backpack from some bushes on Second Street. Recognizing the backpack as the one Fick had been wearing, Deputy Scheyer opened the backpack to ensure that it did not contain any "obvious weapons or other immediate threats." Clerk's Papers (CP) at 38. When she opened the backpack, she saw a spoon, a pipe, and some needles. She sealed the backpack and transported it to the sheriff's office.

Deputy Scheyer then applied for a search warrant for the backpack. In the affidavit supporting the search warrant, she described her initial encounter with Fick; the discovery of the backpack; and the items she found in the backpack, specifically "a spoon, pipe, and needles." CP

_____

[2] The background facts are primarily taken from the search warrant affidavit because neither party presented witnesses at the suppression hearing and defense counsel specifically referred the trial court to the search warrant affidavit.

at 38. After obtaining the search warrant, deputies searched the backpack. Inside the backpack, the deputies found a plastic bag containing a crystalline rock; a piece of foil, a pipe, and spoon containing residue; and an object that was later identified as an explosive device.

## II. PROCEDURE

The State charged Fick with unlawful possession of a controlled substance (methamphetamine), unlawful possession of a controlled substance (oxycodone), possession of explosives without a license, and use of drug paraphernalia. Fick moved to suppress the evidence from the backpack.

Fick argued that (1) Deputy Scheyer's initial warrantless search was unlawful because it did not fall under the emergency exception to the warrant requirement and no one had observed Fick abandon the backpack, and (2) because this initial search was unlawful, the information in the search warrant affidavit that was a result of the initial search should be stricken and the remaining portion of the affidavit was insufficient to support the issuance of the search warrant. The State responded that (1) the initial, warrantless search was proper because Fick had voluntarily abandoned the backpack, and (2) the warrantless search was proper because Deputy Scheyer wanted to ensure the backpack was safe to handle and transport.

After hearing argument and reviewing the search warrant affidavit to establish the facts as defense counsel requested, the trial court ruled that the backpack search was proper because it was abandoned property. Given this ruling, the trial court refused to consider whether the search also fell under the emergency exception to the warrant requirement. The trial court did not specifically address whether the search warrant was valid.

3

The jury found Fick guilty of unlawful possession of a controlled substance (methamphetamine), unlawful possession of a controlled substance (oxycodone), possession of an explosive without a license, and use of drug paraphernalia. The sentencing hearing was held January 15, 2015.

At the sentencing hearing, the trial court sentenced Fick to 24 months confinement and 12 months of community custody. It also imposed $4,000 in mandatory and discretionary LFOs.[3] Fick did not object to the LFOs nor was there any discussion on the record of Fick's employment, finances, or his current or future ability to pay LFOs. Despite this, the judgment and sentence contains a boilerplate paragraph stating that the trial court had "considered the total amount owing, the defendant's past, present and future ability to pay [LFOs], including the defendant's financial resources and the likelihood that the defendant's status will change." CP at 181. The trial court ordered Fick to start paying not less than $35 a month starting April 1, 2015.[4]

Fick appeals his convictions and the LFOs.

## ANALYSIS

### I. DENIAL OF MOTION TO SUPPRESS

Fick first argues that the trial court erred when it denied his motion to suppress the evidence from Deputy Scheyer's initial, warrantless search of the backpack. Fick contends that because he

---

[3] Specifically, the trial court imposed the following LFOs: (1) a $500 victim assessment, (2) a $200 criminal filing fee, (3) $1,500 for court-appointed counsel, (4) a $1,000 fine, (5) $500 for the drug enforcement fund, (6) a $200 crime lab fee, and (7) a $100 deoxyribonucleic acid (DNA) collection fee.

[4] Although the trial court stated at the sentencing hearing that Fick would not be expected to pay LFOs while incarcerated, the judgment and sentence states that Fick would be required to start paying his LFOs on April 1, 2015.

did not expressly disclaim the backpack and hid it in a bush with the intention of later returning

and recovering it, the trial court erred in finding that the backpack was abandoned.  We disagree.

## A.  LEGAL PRINCIPLES

We review the trial court's legal conclusions de novo.  *State v. Acrey*, 148 Wn.2d 738, 745,

64 P.3d 594 (2003).  Warrantless searches may violate article I, section 7 of the Washington State

constitution and the Fourth Amendment of the federal constitution.  *State v. Evans*, 159 Wn.2d

402, 407-08, 150 P.3d 105 (2007); *State v. Reynolds*, 144 Wn.2d 282, 287, 27 P.3d 200 (2001).

But law enforcement may retrieve and search voluntarily abandoned property without a warrant

or probable cause.  *Evans*, 159 Wn.2d at 407-08, *Reynolds*, 144 Wn.2d at 287.

## B.  ABANDONMENT

[T]he question of abandonment
> is primarily a question of intent, and intent may be inferred from words,
> acts, and other objective facts.  Abandonment . . . rests . . . on whether the
> person so relinquished his interest in the property that he no longer retained
> a reasonable expectation of privacy in it at the time of the search.

*United States v. Kendall*, 655 F.2d 199, 201 (1981) (second and third alterations in original)

(quoting *United States v. Jackson*, 544 F.2d 407, 409 (9th Cir. 1976)); *see also Evans*, 159 Wn.2d

at 408 ("The issue is not abandonment in the strict property right sense but, rather, 'whether the

defendant in leaving the property has relinquished her reasonable expectation of privacy so that

the search and seizure is valid.'" (internal quotation marks omitted) (quoting *State v. Dugas*, 109

Wn. App. 592, 595, 36 P.3d 577 (2001))).  The status of the area searched is critical to a

determination of whether a privacy interest has been abandoned.  *Evans*, 159 Wn.2d at 409.  Courts

do not ordinarily find abandonment if the defendant had a privacy interest in the searched area. *Evans*, 159 Wn.2d at 409. The opposite generally holds true if the search is conducted in an area where the defendant does not have a privacy interest. *Evans*, 159 Wn.2d at 410. Disclaiming ownership is not sufficient, by itself, to constitute abandonment. *Evans*, 159 Wn.2d at 412. The circumstances surrounding the disclaimer of ownership dictate whether a defendant has abandoned his or her property. *Evans*, 159 Wn.2d at 413. A defendant who denies ownership of an item located in an area in which he has a privacy interest has not voluntarily abandoned property. *Evans*, 159 Wn.2d at 413.

Fick concedes that the "evidence strongly supports the conclusion that while the defendant hid the backpack in an area *in which he had no privacy interest*," but he asserts that "his intent was not to voluntarily abandon it." Br. of Appellant at 13 (emphasis added). He contends that his failure to expressly disclaim ownership of the backpack and his intentional concealment of the backpack with the intent to return and claim it demonstrates that he did not voluntarily abandon the backpack. This argument is not persuasive.

Although expressly disclaiming ownership is a fact we consider when determining whether a defendant has abandoned property, Fick does not direct us to, nor can we find, any cases stating that an express disclaimer is required. Instead, we examine the facts as a whole to determine if the objective facts establish the defendant disclaimed ownership. *Kendall*, 655 F.2d at 201; *Evans*, 159 Wn.2d at 408.

6

In general, property discarded during an encounter with law enforcement is considered voluntarily abandoned unless there was unlawful police conduct.[5] *State v. Whitaker*, 58 Wn. App. 851, 856, 795 P.2d 182 (1990). Here, despite the fact that Fick did not expressly disclaim the backpack, a reasonable person could infer that Fick's willful act of discarding the backpack while being pursued by law enforcement in an attempt to keep the property from the police evidenced his intent to abandon it. *See State v. Young*, 86 Wn. App. 194, 200-01, 935 P.2d 1372 (1997), *aff'd*, 135 Wn.2d 498, 957 P.2d 681 (1998); *Whitaker*, 58 Wn. App. at 856 (defendant's choosing to drop a container containing cocaine as officers approached him was voluntary abandonment).

Fick also claims that the fact he concealed the backpack in the bushes shows that he only hid the backpack with the intent to retrieve it at a later time, not that he had disclaimed the backpack. Although placing the backpack in the bushes may have demonstrated that Fick did not want the deputies to find it, his concealment of the backpack does not show that he did not abandon the backpack at the time of the search. Fick's subjective intent to reclaim the backpack at a later time is irrelevant to whether the objective facts demonstrated that Fick voluntarily abandoned the backpack at the time of the search. *United States v. Rem*, 984 F.2d 806, 810-14 (7th Cir. 1993) (rejecting defendant's claim that his subjective desire to regain a suitcase was proof of his expectation of privacy in that suitcase, noting that defendant's subjective intent was not relevant to whether the totality of the circumstances indicated that the defendant had voluntarily abandoned the suitcase). And a suspect's subsequent reclaiming of ownership in property which has been

---

[5] Fick does not assert that the police conduct here was unlawful.

voluntarily abandoned does not convert voluntarily-abandoned property into lost or mislaid property so as to establish a Fourth amendment violation after the fact. *Rem*, 984 F.2d at 810-12.

Because the circumstances as a whole demonstrated that Fick had voluntarily left the backpack in a place that he had no reasonable expectation of privacy, Fick had abandoned the backpack and Deputy Scheyer's initial, warrantless search of the backpack was proper. Accordingly, the trial court did not err when it denied Fick's motion to suppress the evidence from this initial search.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

Fick next argues that he received ineffective assistance of counsel because his counsel failed to move to suppress the evidence obtained during the search of the backpack pursuant to the search warrant. He contends that Deputy Scheyer's affidavit did not establish probable cause. This argument fails.

To succeed on an ineffective assistance of counsel claim, Fick must show that defense counsel's conduct was deficient and that the deficient performance was prejudicial. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011); *see also Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To establish prejudice, Fick must demonstrate "a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different." *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). If the ineffective assistance claim fails on one prong, we do not address the other prong. *State v. Staten*, 60 Wn. App. 163, 171, 802 P.2d 1384 (1991).

Fick argues that defense counsel should have moved to suppress the evidence from the second search of the backpack because the deputy's affidavit asserted only that she had seen "'a spoon, pipe, and needles in the backpack'" and these items "are not contraband." Br. of Appellant at 17. But regardless of whether the affidavit established probable cause, Fick cannot establish prejudice because the backpack was voluntarily abandoned, so no search warrant was required to search the backpack. *Evans*, 159 Wn.2d at 407 (searching voluntarily abandoned property is an exception to the warrant requirement); *see also Reynolds*, 144 Wn.2d at 287 (2001) (law enforcement may retrieve and search voluntarily abandoned property without a warrant or probable cause). Thus, regardless of whether the deputy's affidavit established probable cause, the search was still lawful and Fick cannot establish prejudice. Accordingly, his ineffective assistance of counsel claim fails.

### III. DISCRETIONARY LFOS

Fick next argues that the trial court erred by imposing LFOs without first conducting an inquiry into his present and future ability to pay. We agree.

Under RCW 10.01.160(3), "[t]he court shall not order a defendant to pay costs unless the defendant is or will be able to pay them. In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose." Our Supreme Court noted that an appellate court may use its discretion whether to reach unpreserved claims of error. *State v. Blazina*, 182 Wn.2d 827, 830, 344 P.3d 680 (2015). We exercise such discretionary review here.

9

At the sentencing hearing, the trial court imposed $4,000 in mandatory and discretionary LFOs.[6] Fick did not object to the LFOs nor was there any discussion on the record of Fick's employment, finances, or his current or future ability to pay LFOs. Despite this, the judgment and sentence contains a boilerplate paragraph stating that the trial court had "considered the total amount owing, the defendant's past, present and future ability to pay [LFOs], including the defendant's financial resources and the likelihood that the defendant's status will change." CP at 181. The trial court ordered Fick to start paying not less than $35 a month starting April 1, 2015.[7]

The trial court failed to conduct an individualized inquiry regarding Fick's ability to pay the LFOs. We reverse the imposition of the discretionary LFOs and remand for a hearing.

## IV. SCRIVENER'S ERROR

Finally, while reviewing the record in this case, we noted that the judgment and sentence incorrectly states that the jury found Fick guilty of two counts of unlawful possession of *methamphetamine* (counts I and II). But the State charged Fick with one count of unlawful possession of *methamphetamine* (count I) and one count of unlawful possession of *oxycodone* (count II), and the jury found Fick guilty as charged. Thus, remand for correction of this scrivener's error in the judgment and sentence is appropriate.

Thus, we affirm Fick's convictions, reverse the LFOs, and remand for an LFO hearing and for correction of the scrivener's error.

---

[6] Specifically, the trial court imposed the following LFOs: (1) a $500 victim assessment, (2) a $200 criminal filing fee, (3) $1,500 for court-appointed counsel, (4) a $1,000 fine, (5) $500 for the drug enforcement fund, (6) a $200 crime lab fee, and (7) a $100 DNA collection fee.

[7] Although the trial court stated at the sentencing hearing that Fick would not be expected to pay LFOs while incarcerated, the judgment and sentence states that Fick would be required to start paying his LFOs on April 1, 2015.

No. 47135-3-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, P.J.

We concur:

MELNICK, J.

SUTTON, J.